Filed 8/25/15  P. v. Robles CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>IVAN MARCOS ROBLES,<br><br>    Defendant and Appellant. | G050880<br><br>(Super. Ct. No. INF1202627)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Michael B. Donner, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meagan J. Beale and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

A jury convicted defendant Ivan Marcos Robles of forcible rape (Pen. Code, § 261, subd. (a)(2); all statutory citations are to the Penal Code), forcible rape in concert (§ 264.1, subd. (b)(2)), and attempted forcible oral copulation (§§ 288a, subd. (c)(2), 264). It also found the victim of each violation was a minor over age 14 (§ 264, subd. (c)(2) [rape against a minor 14 years of age or older punishable by imprisonment for 7, 9, or 11 years]; § 264.1, subd. (b)(2) [forcible rape in concert on minor 14 years of age or older punishable by 7, 9, or 11 years]; § 288a, subd. (c)(2)(C) [forcible oral copulation on a minor 14 years of age or older punishable by 6, 8, or 10 years].) Robles contends we must reverse or dismiss the rape conviction because it is a lesser included offense of rape in concert. He argues the jury instructions and the trial court's response to a jury question erroneously allowed the jury to convict him of both offenses based on a single act of rape. He also argues conviction and punishment for both offenses violated the prohibition against double punishment under section 654. Finding no basis to reverse the judgment, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

Sixteen-year-old Jane Doe testified that around midnight on the evening of July 22, 2012, she snuck out of her Indio home to buy beer with a male friend. The pair then drove to another friend's residence, where Doe drank beer and became "buzzed." After an hour or two, around 3:30 a.m., Doe and her friend departed, later stopping at a Walmart.

While Doe's friend went to the restroom, Doe walked toward the food section where Robles stood with four or five other males. She did not know anyone in the group, but responded when someone said hello. Her friend emerged from the restroom and the group chatted briefly. Someone in Robles's group offered to give Doe a ride home because Doe's friend lived "a ways out" in Palm Springs. She ignored her friend's advice to decline the offer, explaining they "seemed normal and nice." She

2

walked out of the store with Robles, who put his arm around her. Surveillance video showed Doe and Robles holding hands and hugging.

Instead of taking Doe home, the men stopped at an apartment complex in Indio on the opposite side of the freeway from her residence. They claimed they needed to get something and convinced her to join them in the pool area. The males drank beer, but Doe only took a sip. At some point, Robles or his friend, 16-year-old Oscar R., touched her leg or put an arm around her. She "didn't really go along with it too much" and she used her phone to see if anyone could give her a ride home. When she tried to move away or use the phone they complained she was "messed up" and she was acting rudely. After about 10 minutes, the group returned to the car. Robles and Oscar did not get in the car and told Doe they would take her home because the others were going to Coachella. The group in the car also offered to give Doe a ride home. Not knowing who to believe, she decided to stay with Robles and Oscar because she knew she could find her way home from the apartment complex.

Unable to reach a friend for a ride, Doe decided to start walking home. Robles and Oscar accompanied her. Robles claimed his mother would give Doe a ride and asked to use Doe's phone. She refused, but he grabbed the phone and walked ahead, hopping over a wall adjacent to the apartment parking lot. As Doe and Oscar approached the wall, Oscar grabbed her wrist and tried to kiss her, but she pushed him away. Upset, Oscar hopped over the wall.

Doe rang the doorbells of several apartments to get help but no one answered. Doe began shouting for help. At this point, Robles came out from behind a bush, and told her to be quiet. Doe yelled at them and asked for her phone. They said it was on the other side of the wall with someone else. Robles claimed he lived on the other side and they agreed to return her phone. They gave her a boost to get over the wall. There was a dirt lot on the other side and a park across the street.

3

The trio walked to the park and arrived at a grassy area. Although Doe had difficulty recalling the sequence of events, Robles and Oscar pulled her to the ground and Robles pushed her back onto the grass. Doe had a blanket in her purse and somehow it was placed on the ground. Both men rubbed Doe's vaginal area. Robles removed her shorts and underwear. She cried, begged them to stop, and tried to escape, but Robles held her down by holding her arms while he straddled her and unbuttoned his pants. He forced her legs apart, put his penis inside her and had intercourse with her, ignoring her pleas to stop. He told her he was wearing a condom, but later she heard Robles tell Oscar he had not worn one.

While Robles was having sex with Doe, Oscar was on Doe's side fondling her breasts. At some point, Doe complained her back hurt and they let her sit up. She tried to stand, but they pushed her back down. The men rolled Doe onto her stomach and at least one of the men put his penis in her anus. One of them, she thought it was Robles, asked if he could "stick it . . . in [her] ass." It hurt and she screamed, and one of the men told the other not to do that. Robles put his penis in her mouth while Oscar pinned her on the ground, "grinding" against her.

Robles got on top of Doe again after the sexual intercourse. She put her hands around his neck and tried to hurt him. After Robles got off Doe, Oscar got on top of her. She pulled on his shirt as he tried to put his penis in her vagina, but she was not sure whether he succeeded. She testified at the preliminary hearing Oscar's penis touched the area above her vagina and she told an officer his penis penetrated her "a little bit." She also recalled Oscar putting his mouth on her breast. Oscar became angry when Doe ripped his shirt. He stood up, throwing her shorts and underwear at her.

Oscar tried to take her purse, but Doe managed to wrestle it away from him. The men laughed and ran away. Doe saw them jump back over the wall to the apartments. She flagged down a motorist who took her home.

4

Doe hesitated to call the police when she got home because the incident did not "feel real" and she was not sure she wanted to "face it." She tried to locate her phone using the computer and tried phoning friends. She fell asleep, and woke up around 9:00 a.m. She told her mother her phone had been stolen, which led to a tearful, but general disclosure of the rapes. Doe initially told her mother and a police officer that she met Robles and Oscar while out for a walk around 5:00 a.m., but later told the officer about meeting the men at Walmart. She lied to her mother and police officers about certain details because she was worried she might get in trouble for sneaking out of the house, felt her role in the incident was embarrassing, and she did not want to disappoint her mother about "all the mistakes that [she] made."

Mary Bedolla was driving to work just before 6:00 a.m. when she spotted Doe in the middle of the street trying to get a ride. Doe was crying and disheveled and told Bedolla she needed to get home to see her mother. Just before they arrived at Doe's house, Doe broke down and declared "they raped me. They raped me" and "I was raped." Bedolla told a police officer that Doe said four persons raped her in the park.

Detectives contacted Robles and Oscar at the pool area of the apartment complex later that day. Oscar claimed his name was "Eric Flores." Robles denied knowing anything about a sexual assault and also denied going to Walmart, claiming he had not gone out all night. Surveillance video from the apartments showed Doe walking outside the apartments with two males trailing her. After reviewing the Walmart surveillance video, investigators returned to Robles's apartment. Robles's mother delayed opening the door, allowing Robles to jump from the second floor balcony and flee the area.

A sexual assault nurse examined Doe the following afternoon. Doe had redness in her mouth above her left front tooth, which was consistent with forced oral copulation. Doe had grass-like debris on and inside her vagina. She had a notch or divot missing from her hymen, redness on the lower portion of her external genitalia and on

5

both sides of her labia minora and in the crease, and pinpoint bruising, or petechiae, on and around her cervix. Doe also had debris and vegetation outside and inside her anus, and a spot of redness on both the outside and inside of the anus, or anal verge. There was a small area of oozing blood on the rectal tissue inside the anus. The nurse swabbed Doe's mouth, hands, neck, breasts, genitalia, and anus for DNA. Doe told the nurse one person put his penis in her vagina twice, and a second person tried to put his penis in her anus. Doe said she urinated and wiped herself once before the exam. She also reported the men said they used a condom, but she never saw one.

The parties stipulated Robles's DNA was found on Doe's breasts, and Oscar's DNA was found in Doe's vagina and rectum.

Robles testified Doe agreed to leave Walmart with his group after they told her they were going to the apartment for a swim. At the pool, Doe sipped on her own beer. Later, the group leaving for Coachella asked Doe if she wanted a ride, but she ignored the question.

The trio returned to the pool and chatted for about 15 minutes. Robles and Doe were "getting . . . friendly," sitting close, legs rubbing, and holding hands. She flirted with both Robles and Oscar. They left the pool area because they were getting loud and Robles did not want to disturb the neighbors. But Robles testified at the preliminary hearing they departed because he thought Doe wanted to "hook up" with him. Robles claimed Doe agreed to go to the park.

Robles and Doe held hands and "peck[ed]" at each other with "simple kisses." Doe gave Robles the most attention, but also rubbed against Oscar with her hand. Robles jumped over the wall first, and Oscar then helped Doe over.

Robles denied taking Doe's phone or coming back from the other side of the wall after he initially climbed over. Robles claimed Doe took the blanket out of her purse and they placed it on the grass next to or behind palm trees or bushes. Robles believed Doe wanted to have sex by the way she acted. Doe sat or laid between Robles

6

and Oscar. They were all "buzzed . . . a decent amount." Robles and Doe got "really . . . friendly" and hugged and kissed a lot. They began "making out" while Oscar sat on the blanket looking at the sky.

Robles grabbed Doe from behind and she reached around his pelvic area. She reached into his shorts and touched his penis while rubbing her body against him. She removed her hand from his shorts, and he pulled her on top of him and kissed her neck and breast area.

Doe then moved away from Robles and began "grinding" on Oscar's leg. They began kissing. Oscar pulled down his shorts, and Doe pulled her shorts off with Oscar's assistance. At some point, Oscar asked Robles if he had a condom, but Robles said he did not have one. Doe got on top of and straddled Oscar for five to seven minutes. Robles did not see Doe on her stomach, nor did he see Oscar on top of Doe.

During or after Doe's encounter with Oscar, Doe touched Robles's crotch area and then either he or Doe took out his penis. Doe orally copulated him for one to three minutes. He stopped or pulled his penis out of her mouth. He felt awkward either because he and Oscar were touching, or because Doe wanted to stop. Robles denied having intercourse with Doe.

After Doe gave Robles oral sex, she asked if one of them took her phone. She wanted it back and became very upset. Oscar tried to help by looking in her purse, but she accused him of trying to steal it. Robles denied they threw Doe's clothing at her. Because Doe was "tripping out," they decided not to walk her home and returned to Robles's apartment. He fled when police officers returned to his apartment because he knew they were going to arrest him and he wanted "an extra day out" to "get some freedom" to spend time with friends. He turned himself in the following day.

Following trial in March 2013, the jury convicted Robles as noted above, but the jury acquitted him of attempted forcible sodomy (§§ 286, 264). In September 2013, the court denied Robles's new trial motion. The court imposed a sentence of 13

7

years and four months in prison, comprised of the nine-year midterm for rape (count 1), a consecutive three-year term (one-third midterm) for rape in concert (count 2), and a consecutive 16 months (one-third midterm) for attempted forcible oral copulation.

## II

### DISCUSSION

*A.      The Trial Court Did Not Commit Instructional Error and Correctly Responded to the Jury's Question.*

Robles contends we must either reverse or dismiss his rape conviction (count 1) because rape is a lesser included offense of rape in concert (count 2) and the evidence showed only one rape occurred.  He complains the trial court erred in failing to instruct the jury "they could only convict [Robles] of two counts of rape if in fact they found that he personally raped the victim and aided and abetted Oscar as well.  As it was, due to the ambiguous jury instructions, and the court's failure to correct the ambiguity in response to the jury's question, the jury likely found [Robles] aided and abetted one forcible rape but convicted him of two counts of rape."

Robles's argument is premised on the assumption Oscar committed the only act of sexual intercourse with the victim, and the jury therefore found Robles guilty of both counts as an aider and abettor to a single act of rape.  This is a reasonable possibility, but not the only one.  It is also possible the jury found Robles personally raped the victim and then aided and abetted Oscar's subsequent rape, thus finding two rapes occurred.  Because we do not know which conclusion the jury adopted, there is no basis to overturn the verdicts.

### 1.  Background

The information charged Robles with forcible rape (count 1) and forcible rape in concert (count 2).  The court instructed on the elements of forcible rape in the following manner:  "[T]he People must prove, that: One, the defendant had sexual intercourse with a women [*sic*]; two, he and the woman were not married to each other at

8

the time of the intercourse; three, the woman did not consent to the intercourse; and four, the defendant accomplished the intercourse by force, violence, duress, menace or fear of immediate and unlawful bodily injury to the woman or to someone else. [¶] Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." The court also instructed that rape required a general criminal intent, meaning a person acts with a wrongful intent if he intentionally does a prohibited act.

The court gave the following instruction on the elements of rape in concert: "The defendant is charged in Count 2 with committing rape by acting in concert with Oscar [R.]. To prove that the defendant is guilty of this crime, the People must prove that: One, the defendant personally committed forcible rape and voluntarily acted with someone else who aided and abetted its commission. Or two, the defendant voluntarily aided and abetted someone else who personally committed forcible rape. [¶] To decide whether the defendant or Oscar [R.] committed rape, please refer to the separate instructions that I have given you on that crime. To decide whether the defendant or Oscar [R.] aided and abetted rape, please refer to the separate instructions that I have given you on aiding and abetting. You must apply those instructions when you decide whether the People have proved rape in concert."

The court further instructed on the concept of principals to a crime and aiding and abetting as follows: "A person may be guilty of a crime in two ways: One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator. . . . [¶] To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: One, the perpetrator committed the crime; two, the defendant knew that the perpetrator intended to commit the crime; three, before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; And four, the defendant's words or

9

conduct did, in fact, aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose, and he or she specifically intends to, and does, in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime."

During closing argument, the prosecutor asserted Robles was guilty of forcible rape as charged in count 1 as a direct perpetrator. He cited Doe's testimony that Robles had sexual intercourse with her against her will and without her consent. The prosecutor also argued the jury could find Robles guilty of forcible rape in concert as charged in count 2 "using one of two theories . . . . In the first theory [Option A], you have to find that the defendant personally committed rape, and that he voluntarily acted with someone else. Here that would be Oscar who aided and abetted [Robles] in the commission of the rape. The second theory is that if . . . you believe that Oscar raped Jane Doe and the defendant aided and abetted Oscar, he's still guilty of rape in concert." The prosecutor stated "Option A is the option that most closely resembles the facts and evidence that you've heard in this case. The reason I say that is because if you believe that Jane Doe is telling the truth, you've already concluded that the defendant is guilty of rape in Count 1. So that first option that the defendant personally committed forceful rape, that's already been satisfied. [¶] So then, the only question left for you is did Oscar aid and abet [Robles]."

The prosecutor continued that "if you don't believe [Robles] committed rape, if you don't find [him] guilty of rape in Count 1, the defendant can still be guilty of rape in concert, using that second option like we've already discussed. And in order to go that way, what you have to find is that Oscar is the one who raped her, and that the defendant somehow aided and abetted Oscar in the commission of that rape. [¶] No matter which avenue you take, ladies and gentlemen, the evidence is more than sufficient to prove each of these elements beyond a reasonable doubt."

Defense counsel argued Doe lacked credibility, noting the inconsistencies between her testimony and her out of court statements, highlighted Doe's admissions of untruthfulness, and concluded Doe either consented to have sex with Robles, or Robles might have reasonably believed she consented. Counsel suggested Doe was concerned or angry about her missing cell phone and manufactured the rape allegations to divert attention from her poor choices. Robles's lawyer described the count 1 rape charge as "vaginal sex by [Robles]," argued the DNA results and other evidence showed that Oscar, not Robles, had sexual intercourse with Doe. Counsel also argued the count 2 rape in concert charge was based on Oscar's sexual intercourse with Doe, there was no evidence Robles did anything to "help[] him in some way," and Oscar reasonably could have believed Doe consented.

During deliberations, the jury asked to have Doe's testimony concerning the "actual alleged assault" read back. Later, the jury asked the following: "Does aiding and abetting apply to each of the counts – 400." The "400" referred to CALCRIM No. 400, the aiding and abetting instruction. Defense counsel stated he understood the rape charged in count 1 "was just a rape, [by] my client," and questioned "whether they need to find that Oscar aided and abetted my client?" The court stated it did not "think the question's asking [about?] that sexual assault," and aiding and abetting applied to every count except the oral copulation charge because Robles admitted he put his penis in Doe's mouth. Although Robles's lawyer stated he did not think aiding and abetting applied to the rape charged in count 1, the court answered the jury's question "yes, as to Counts 1, 2 and 3" and the lesser offenses associated with those counts. A short time later, the jury returned with a verdict convicting Robles of forcible rape, rape in concert, and attempted oral copulation, but acquitted him of attempted sodomy.

2. Analysis

Under section 954 multiple convictions are permitted for a single act. (*People v. Reed* (2006) 38 Cal.4th 1224, 1226.) "A judicially created exception to the

11

general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.'" (*Id.* at p. 1227.) A conviction for a lesser included offense and the greater offense is, in essence, only one offense. (*People v. Moran* (1973) 33 Cal.App.3d 724, 730.) In determining whether an offense is necessarily included in another, we look to see if the elements of the lesser offense are included in the elements of the greater offense. "In other words, 'if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.'" (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.) Forcible rape is a necessarily included offense of forcible rape in concert because rape in concert cannot be committed without also satisfying the elements of forcible rape.

Based on the jury's question and the court's answer, Robles argues "it is almost a certainty that the jury found that one person, likely Oscar, raped the victim and the other person, [Robles], aided and abetted." Although the jury asked whether aiding and abetting applied to all the counts, Robles reasons the jury most likely asked the question because they had concluded Oscar was the only assailant who had sexual intercourse with the victim. We acknowledge it is quite possible, perhaps probable, that at least some jurors favored this conclusion. But even if the jury's question about aiding and abetting focused on count 1, it does not follow the jury believed only one rape occurred. The jury reasonably could conclude the victim mistakenly believed Robles, rather than Oscar, forced her to have sexual intercourse, but believed Oscar raped her again in a subsequent attack. There is evidence to support this view. Oscar's DNA was found on swabs taken from the victim's vagina, Robles denied having intercourse with the victim, and there was no evidence Robles's DNA was found in the victim's vagina. The victim also told an investigator Oscar may have penetrated her "a little bit" in a second rape.

It is equally plausible only a few jurors harbored doubts Robles was the assailant who had sexual intercourse with the victim, but agreed Robles would still be

12

guilty of the rape charged in count 1 as an aider and abettor. The jury under this scenario also could have concluded Robles aided and abetted Oscar's subsequent sexual assault of the victim and therefore found him guilty of rape in concert.

Thus, the evidence does not show as a matter of law only one act of rape occurred. Robles impliedly acknowledges this when he argues "the evidence *tended* to show only one individual raped the victim" and it is "highly *probable*" Robles's convictions "are based on a single act of rape." (Italics added.) The premise of Robles's argument therefore fails because the jury plausibly could have concluded two acts of rape occurred, an option the prosecutor discussed in his closing argument.

Robles complains the trial court erred by failing to instruct the jury they could only convict Robles of two rapes "if in fact they found he personally raped the victim and aided and abetted Oscar as well." Robles argues the court compounded its error by failing "to correct the [instructional] ambiguity in response to the jury's question," which meant the jury "likely found [Robles] aided and abetted one forcible rape but convicted him of two counts of rape."

The trial court correctly instructed the jury on the general principles of law relevant to the issues in the case, and Robles does not contend the instructions given were erroneous. Rather, Robles asserts the trial court erred in not clarifying what he perceived to be an ambiguity in those instructions. But it was Robles's obligation, not the court's, to offer clarifying instructions. As the Supreme Court has observed, "'a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.'" (*People v. Guivan* (1998) 18 Cal.4th 558, 570.)

Robles argues the trial court failed "to cure the jury's confusion." (See *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212 superseded by statue on another ground as recognized in *In re Steele* (2004) 32 Cal.4th 682, 691.)[trial court has "'mandatory' duty to clear up instructional confusion expressed by the jury"].) Not so. The jury here

simply asked whether aiding and abetting applied "to each of the counts" and the court correctly responded it applied to counts 1, 2, and 3 and to the lesser included offenses. This directly answered the jury's question. There is nothing in the jury's question to suggest they were confused about whether they could convict Robles on two counts if they found a single act of rape. Rather, some jurors may have rejected the prosecutor's argument Robles was the assailant who had forcible sexual intercourse with the victim. If so, these jurors may have been uncertain whether they could use aiding and abetting principles to evaluate Robles's culpability. The court therefore correctly informed the jury aiding and abetting applied to count 1. No basis exists to overturn the judgment on this ground.

B.       *Section 654 Did Not Apply to Robles's Sentence.*

Finally, Robles contends the trial court violated the prohibition against double punishment for a single act under section 654 when it sentenced him to the middle term on the forcible rape conviction in count 1 and a consecutive term of one-third the middle term on the rape in concert conviction in count 2. Robles challenges the sufficiency of the evidence to support the imposition of a consecutive term based on his view only one rape occurred.

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." If a defendant suffers two convictions based on a single act, section 654 requires the court to impose sentence on both convictions, but to stay the sentence on the shortest term. (*People v. Deloza* (1998) 18 cal.4th 585, 591-592.) Whether section 654 applies is a question of fact for the trial court, and we must uphold the trial court's determination if supported by substantial evidence. (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289.)

14

Robles again rests his argument on the incorrect assumption the evidence shows only one rape occurred.  He based his challenge to his rape conviction on the same foundation, and we again conclude the evidence does not support his argument.  The trial court expressly found the victim suffered two separate acts of rape.  In sentencing, Robles, the court observed, "you were the first one to have sexual relations with her, and then you helped Oscar engage in sex acts with you."  As discussed above, ample evidence supports the court's finding.

## III

### DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.